IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| DONNA MOALES,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSITY HEALTH, INC. d/b/a UNIVERSITY HEALTH CARE SYSTEM,<br><br>    Defendant. | CIVIL ACTION NO.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff DONNA MOALES brings this Complaint for damages and other relief against Defendant UNIVERSITY HEALTH, INC. d/b/a UNIVERSITY HEALTH CARE SYSTEM and alleges as follows:

### NATURE OF THE ACTION

1.   This is an action for discrimination in violation of the Americans with Disabilities Act as Amended ("ADAAA"), 42 U.S.C. § 12101 *et. seq*.

### PARTIES

2.   Plaintiff Donna Moales ("Moales" or "Plaintiff") is a citizen of Georgia.

1

3. Defendant University Health, Inc. d/b/a University Health Care System ("University Health" or "Defendant") is a Georgia company, licensed to conduct business in Georgia.

4. University Health's principle office is located at 1350 Walton Way, Augusta, Georgia 30901.

5. University Health may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Edward L. Burr, at 1350 Walton Way, Augusta, Georgia 30901.

## JURISDICTION AND VENUE

6. The Court has original jurisdiction over Moales' claim pursuant to 28 U.S.C. § 1331 because it raises questions of federal law.

7. Under 28 U.S.C. § 1391 and Local Rule 2.1, venue is proper because a substantial part of the events or omissions giving rise to Moales claim occurred within the Augusta Division of the Southern District of Georgia.

## ADMINISTRATE PROCEEDINGS

8. Moales timely filed a Charge of Discrimination for disability discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on February 13, 2019.

9. On September 2, 2020, the EEOC issued a Notice of Rights on Moales' Charge.

10. Moales files this Complaint within 90 days of her receipt the Notice of Rights.

## FACTUAL ALLEGATIONS

11. University Health operates several hospital and out-patient healthcare clinics throughout South Georgia.

12. University Health is a covered entity under the ADAAA.

13. At all relevant times, Moales was an "employee" of University Health as that term is defined by the ADAAA, and she is entitled to the protections provided thereunder.

14. Throughout Moales' employment, University Health was an "employer" as defined by the ADAAA.

15. At all relevant times, University Health was Moales' employer.

16. Throughout Moales' employment, University Health had more than 15 employees for each working day in each of 20 or more calendar weeks in each calendar year.

17. Moales worked for University Health from September 2013 until November 12, 2018.

18. From September of 2013 until approximately June of 2018, Moales worked as a Patient Care Technician, providing care for patients, such as lifting, bathing, and turning patients, as well as clearing used food trays.

19. In March of 2018, Moales went out of work due to a diagnosis of degenerative disc disease.

20. Degenerative disc disease is a covered disability under the ADAAA.

21. Degenerative disc disease is a physical impairment that substantially limits a major life activity.

22. Moales suffered from chronic neck and shoulder pain due to her degenerative disc disease.

23. Moales' degenerative disc disease substantially limited Moales' ability to shop for groceries, play with her grandchildren, upkeep and clean her home, sleep, and bathing herself.

24. Despite suffering from degenerative disc disease, Moales could and did perform her essential job functions.

25. In March of 2018, Moales underwent surgery on her neck to help relieve the pain associated with the degenerative disc disease.

26. Moales returned to work in June 2018, under light-duty restrictions, including a recommendation that she not lift more than 10 pounds.

27. Upon her return, Moales began working as a Unit Clerk, which entailed assisting nursing staff, cleaning patient rooms, confirming rooms were properly stocked, relaying patient requests, and assisting hospital visitors.

28. Moales worked this position because it was within her recommended restrictions.

29. Moales continued to work as a Unit Clerk until early September 2018.

30. During her tenure as a Unit Clerk. Moales was never issued any formal or informal reprimand regarding her job performance.

31. On September 10, 2018, University Health omitted Moales from the upcoming work schedule.

32. Daniel Ciccio informed Moales that she needed to see her physician before University Health would place her back on the schedule.

33. Ciccio was Moales supervisor.

34. As required by University Health, Moales saw her physician.

35. Her physician modified the recommended restrictions to include a 20-pound weight limit.

36. The newly recommended weight-lifting limit did not prevent Moales from performing the essential job functions of Unit Clerk.

37. Moales performed the essential job functions of Unit Clerk while under a recommended 10-pound weight-lifting limitation.

38. On September 17, 2018, Chris Holland informed Moales that University Health was placing her on a leave of absence because University Health could not accommodate her new restrictions.

39. Holland was a Leave Coordinator for University Health.

40. On September 20, 2018, Moales inquired of Ciccio if she could be assigned to the floating pool.

41. Moales requested she be assigned to the floating pool in an effort to accommodate her disability, because University Health had erroneously claimed it was unable to accommodate Moales in her current position, despite previously doing so.

42. Ciccio denied Moales' request.

43. After removing her from the schedule, University Health made no effort to engage in an interactive process with Moales to determine an accommodation for her disability.

44. On October 18, 2018, Moales reached out to Suzanne Yates about accommodations and/or leave options.

45. Yates was a Senior Employee Relations Specialist for University Health.

46. On November 5, 2018, Yates informed Moales that she was not eligible for Family Medical Leave, but that she may be eligible for other types of leave or other accommodations.

47. On November 12, 2018, University Health terminated Moales.

48. Yates informed Moales that the reason for her termination was due to a no-call/no-show.

49. University Health removed Moales from the schedule and refused to accommodate her disability.

50. University Health's articulated reason for Moales' termination was a pretext for unlawful discrimination.

**COUNT I: DISCRIMINATION IN VIOLATION OF THE ADAAA**

51. Plaintiff was disabled.

52. Plaintiff had a record of disability.

53. Defendant regarded Plaintiff as disabled.

54. Defendant terminated Plaintiff's employment because of her disability.

55. Defendant failed to make reasonable accommodations for Plaintiff's disability when it terminated her for her disability.

56. Defendant's discrimination of Plaintiff was unlawful.

57. Defendant knew that Plaintiff was disabled and that it was failing to make a reasonable accommodation for Plaintiff, as required under the ADAAA, and it willfully and maliciously violated the law.

58. As a result of Defendant's unlawful discrimination in violation of the ADAAA, Plaintiff has suffered mental and emotional distress, as well as lost wages and the benefits of employment.

59. Defendant terminated Plaintiff because of her disability, her record of being disabled, and/or because Defendant regarded her as disabled.

60. Defendant is liable for all damages resulting from its acts of discrimination against Plaintiff.

61. Defendant is liable for punitive damages because of its intentional, willful, and malicious conduct.

## DEMAND FOR JUDGMENT

Plaintiff respectfully requests that the Court:

(a) Find that Defendant violated the ADAAA and that its violation of was willful;

(b) Enter judgment against Defendant that is willfully violated the ADAAA;

 (c) Enter a monetary judgment against Defendant, including:

  i) Back pay;

  ii) Front Pay;

  iii) Compensatory damages;

  iv) Punitive damages;

  v) Reasonable costs and attorneys' fees; and

  vi) Prejudgment interest; and,

 (d) Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff demands a jury trial.

Respectfully submitted: December 1, 2020.

            /s/ Andrew Y. Coffman
            Andrew Y. Coffman
            Georgia Bar No. 173115

PARKS, CHESIN & WALBERT, P.C.
75 Fourteenth Street, 26th Floor
Atlanta, GA 30309
T: (404) 873-8000 | F: (404) 873-8050
acoffman@pcwlawfirm.com
*Counsel for Plaintiff*